UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | (Motions Judge R.M. Collyer) |
| | : | |
| v. | : | Case No. 06-306-01 (TFH) |
| | : | Case No. 05-242-01 (unassgnd) |
| **MICHAEL DANIEL RICHARDS,** | : | |
| Defendant. | : | Hearing Date: Oct. 19, 2006 |

## MOTION FOR REVIEW AND APPEAL OF RELEASE ORDERS

*COMES NOW*, the United States of America, by and through its Attorney, the United States Attorney for the District of Columbia, respectfully to appeal for review of the Magistrate Judge's decision to release defendant pending trial in both Criminal Case Nos. 06-306-01 (TFH) and 05-242-01 (currently unassigned). The record shows that no condition nor combination of conditions for defendant's release will reasonably assure the safety of the community. Therefore, we ask the Court to hold defendant without bail pending trial. In support whereof, we submit as follows:

## BACKGROUND

1. On June 23, 2005, the Grand Jury for the United States District Court for the District of Columbia rendered a three count indictment against Defendants Michael Richards and Donnie Smith, which resulted in Criminal Case No. 05-242, that alleged: In Count One that from December 2001 to May 2002, that they along with others conspired to distribute and possess with the intent to distribute 50 grams or more of cocaine base. Also known as "Crack." In Count Two that on December 6, 2001, the Richards and Smith aided and abetted one another to distribute 50 grams or more of crack. And, in Count Three that on February 19, 2002, that Richards and Smith aided and abetted one another to distribute more than 5 grams of crack. Despite the fact that an arrest warrant

issued and Defendant Richards was designated as a fugitive from justice, he was not apprehended in this 2005 case until he was arrested on another crack charge on September 26, 2006. Additionally, on February 17, 2006, Defendant Richards was arrested on a District of Columbia Superior Court misdemeanor drug charge, Docket No. 2006-CMD-002873. He was released on the misdemeanor case on March 2, 2006, but the District Court arrest warrant was inexplicably not executed.

2. On October 5, 2006, U.S. Magistrate Judge Deborah A. Robinson, in Case No. 05-242, denied the Government's request to hold Defendant Richards without bail pending trial. That motion was based on 18 U.S.C. § 3142(f)(1)(C), which authorizes pre-trial detention in any case involving a crime under the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, carrying a maximum penalty of ten years or more in prison. At the detention hearing, in support of its motion, the Government proffered the indictment and a statement of facts of the case. The Magistrate Judge Robinson denied the Government's motion for pre-trial detention. Instead, she released Defendant Richards into the High Intensity Supervision Program with a stay away order from the offense location.

3. Also, on October 5, 2006, Defendant Richards was presented on Magistrate Case no. 06-410, in connection with a crack charged which ultimately because Count Three of his indictment in Case No. 06-306. Despite the evidence stated below, Magistrate Judge Robinson found no probable cause and dismissed the complaint in Magistrate Case No. 06-410.

4. On October 12, 2006, the Grand Jury for the United States District Court for the District of Columbia rendered a three count indictment against Defendants Michael Richards, Russeline Deniel Miles and Christopher Fleming, which resulted in Criminal Case No. 06-306, that alleged: In Count One that from January 2006 through September 2006, the three defendants aided and

abetted one another to unlawfully maintain a premises to manufacture, distribute, store and use crack.  In Counts Two and Three, on August 18, 2006 and August 29, 2006, respectively, the three Defendants aided and abetted one another to distribute more than 50 grams of crack. In Counts Four and Five, on September 22, 2006 and September 26, 2006, respectively, the three Defendants aided and abetted one another to distribute a detectable amount crack.  And, that on September 26, 2006, the date of their arrests, that the three Defendants possessed with the intent to distribute and aided and abetted each other to illegally possess more than 50 grams of crack.

    5.  On October 18, 2006, the Government sought to hold Defendant Richards without bond pending trial in Case No. 06-306 based on 18 U.S.C. § 3142(f)(1) C.  Again, Magistrate Judge Robinson denied the Government request, found that the undersigned Government counsel's proffer of evidence was not evidence and that his arguments were disingenuous. Magistrate Judge Robinson Ordered the release of Defendant Richards into the High Intensity Supervision Program with home detention.  Magistrate Robinson stayed her Order to allow the Government to seek this appeal of her rulings.

    6.  In making her rulings, in both cases, Magistrate Judge Robinson found Defendant Richards had overcome the presumptions in favor of their detention because, *inter alia*, the counts in the prior indictment were remote, Defendant Richards had complied with his conditions of release in his misdemeanor case, he drug tested successfully, and Defendant Richards was not under any other form of judicial supervision at the time of his arrest.  The Magistrate Judge also pointed to Defendant Richards' community ties reflected in the presence of his wife in Court.

<u>The Government's Proffer, Case No. 05-242:</u>

7. This started out as a DEA investigation that they were developing in 2000, targeting the location, 77 Hawaii Avenue, NE, Apartment 204 in November 2000. The Defendant Michael Richards, aka "Wayne," was the primary target of the investigation. On December 6, 2001 at approximately 3:30 p.m., the UC called Richards on xxx-xxxx and set up the buy for about an hour later. The call was recorded and has been transcribed. At approximately 4:46 p.m., UC and Officer Norris drove to xx xxxxxxx Street NE and parked. Donnie Smith talked to them through passenger window. According to the buy report, Smith then went to talk to Richards and motioned the UC over. The OP tape captures Smith talking to the UC in the car. Once in the building, Smith tells the UC to go upstairs. The UC says no and asks where Richards is located. A woman responds he's in Apartment 104 and will be right out. Richards then comes out of Apartment 104 with crack and the Richards and the UC go upstairs to Apartment 201, which is leased to Donnie Smith. The UC then gives Richards $2400 in exchange for 50.6 grams of crack cocaine.

8. On February 19, 2002, at approximately 4:18 p.m., the UC calls Richards on xxx-xxxx[1] and sets up the deal for later that day. The call was recorded and has been transcribed. The UC told Richards to come out to the car because his leg is messed up. At approximately 5:11 p.m., the UC drove up in front of xx xxxxxxx Street, NE and Donnie Smith approached the car. The UC asked where Richards was, and Smith pointed to the window and told the UC to lean over and he could see him. The UC then told Smith to get in the car, and he handed Smith $2400 in exchange for 51.4 grams of crack cocaine. The interior car camera catches this all on tape, including the sound, and the quality is very good. There is also an observation video tape.

---

[1] The old number xxx-xxxx was changed to this new number on the same account, with the same subscriber and subscriber information as before.

<u>The Government's Proffer, Case No. 06-306:</u>

9. On August 18, 2006, the Metropolitan Police Department's Narcotics and Special Investigations Division (MPD/NSID), Unit while conducting undercover narcotics operations, in the high crime area of 65 Hawaii Avenue, Northeast, Washington, D.C., purchased approximately 61 grams of cocaine base from these coconspirators for $2,400.00, in U.S. currency.  Specifically, the purchase was made directly hand-to-hand from Defendant Richards, who transferred the 61 grams of cocaine base to the undercover officer, in exchange for $2,400.00, in U.S. currency.  However, at the direction of Defendant Miles, Defendant Richards gave her the $2,400.00, that the undercover officer had paid Defendant Richards for the cocaine base that he received contemporaneously from Defendant Richards.  Undercover investigation demonstrates that Defendants Richards, Miles and Fleming, utilized Apartment No. 202, xx xxxxxx xxxxxx, Northeast, Washington, D.C., to store and sell cocaine base from January 2006 through September 2006 based on evidence gained by the MPD NSID Unit.

10. On August 29, 2006, the Metropolitan Police Department's Narcotics and Special Investigations Division (NSID) conducted a narcotics operation in the high crime area of xx xxxxxi xxxxxx, Northeast, Washington, D.C.  The NSID had identified Defendants and coconspirators Michael Richards, Russeline Miles and Christopher Fleming as major cocaine base, also known as crack distributers in Northeast Washington, D.C. On August 29, 2006, at approximately, 6:30 p.m., the NSID, conducted an undercover narcotics operation which had been set-up directly with Defendant Richards via a recorded telephone call for the purchase of 62 grams of cocaine base.  At approximately, 7:30 p.m., an undercover officer (UC) met with Defendants Michael Richards, Russeline Miles and Christopher Fleming, in the front of xx xxxxxx xxxxxx, Northeast, Washington.

While the UC was on a recorded telephone call to Defendant Richards, Defendants Miles and Fleming came out of xx xxxxxx xxxxxx. Defendant Fleming sat in the back of the UC vehicle, and Defendant Miles sat in the front and she advised that Defendant Richards was inside 65 Hawaii Avenue watching the cocaine base transaction. While still on the recorded telephone call with Defendant Richards, he assured the UC that it was save to deal with Defendants Miles and Fleming, by stating that they were "family." Accordingly, Defendant Fleming handed the UC 60 grams of cocaine base which concealed inside a black plastic bag. The UC then gave Defendant Miles, $2,400.00, in U.S. currency. Defendant Miles openly counted the money and both Defendants Miles and Fleming exited the UC vehicle.

   11. On September 22, 2006 and September26, 2006, undercover purchases of cocaine base where made directly from Apartment No. 202 from Defendants Richards, Fleming and Miles. The NSID obtained a District of Columbia Superior Court search warrant for Apartment No. 202, which is leased by Defendant Fleming.

   12. On September 26, 2006, at approximately, 7:00 p.m., the NSID sought to execute the search warrant it had obtained for Apartment No. 202. Additionally, the NSID had set-up a deal for 62 grams of cocaine base via a recorded telephone call to Defendant Richards. Upon their arrival, Defendants Richards, Miles, and Fleming were all standing outside of the building. The NSID based on the facts of investigation sought to detain the three defendants. Defendant Miles spontaneously told the police that she had a large quantity of cocaine base in her upper undergarment and confessed that she and Defendants Richards and Fleming had been distributing cocaine base together for approximately 18 months. Search incident to arrest of Defendant Richards disclosed $686.00, in U.S. currency and 4 $10.00 ziplocks of cocaine base which ziplocks matched the numerous empty

ziplocks which were seized from inside Apartment No. 202, which apartment was leased by Defendant Fleming. All the substances seized and purchased during this undercover cocaine base investigation field-tested positive for cocaine.

## ARGUMENT

13.    The Government submits that this Court should overturn the decisions to release Defendant and order him held without bail instead. When a detention motion has been denied, 18, U.S.C. § 3145(a) states:

> **(a) Review of a release order** – If a person is ordered released by a magistrate, . . .
>
> > **(1)** the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . .
>
> The motion shall be determined promptly.

On the government's motion to review a release order, this Court considers *de novo* the Magistrate Judge's denial of pre-trial detention. In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not raised previously. In short, the Court may proceed in the way that best enables it to answer the question posed: whether any condition or combination of conditions will reasonably assure the safety of any other person and the community?    To that end, it is worthwhile recalling Congress' intent in 1984 when it enacted the current version of the Bail Reform Act:

> Many of the changes in the Bail Reform Act reflect the . . . determination that Federal bail laws must . . . give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released. . . .    The constraints

of the Bail Reform Act fail to grant the Courts the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community. . . . ***This broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release.***

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S.Code Cong. & Ad.News 3182, 3486-3487. (Emphasis added.)[2]

---

[2] Regardless of why the government sought a detention hearing, the Court always must consider whether defendant's release is a danger to the community. This point is made throughout the Bail Reform Act. Section 3142(e), which authorizes detention without bail pending trial, states:

> If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required *and the safety of any other person and the community*, such judicial officer *shall order* the detention of the person before trial.

Emphasis added. Similarly, § 3142(f) states:

> The judicial officer shall hold a hearing to determine whether any condition of combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person *and the safety of any other person and the community* –
>
>   (1) upon motion of the attorney for the Government, in a case that involves,
>
>     (C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 *et seq*.) . . .

Emphasis added. This point is again made in § 3142(g), **Factors to be considered**, which states:

> The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required *and the safety of any other person and the community*, take into account the available information concerning –
>
>   (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>   (2) the weight of the evidence against the person;
>   (3) the history and characteristics of the person . . .
>   (4) *the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .*

(Emphasis added.)

14.     No condition of release or combination of them can ensure that defendants will not pose a danger to the community if released.  This is based first upon the presumption to that effect written into the Bail Reform Act.  18 U.S.C. § 3142(e) ("Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions of release will reasonably assure the . . . safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act.").  This presumption, triggered by defendants' indictment, is re-enforced overwhelmingly by the facts of their case.

A.  *Defendant is in the drug trade, and is a threat to return to it if released*:

15.     The facts of these cases demonstrate the danger that Defendant's release poses.  As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community.  The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . . .  The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community.

S.Rep. No. 225, *supra*, at 3195-3196.

B. *Defendant's crimes implicate both danger to the community and the risk of flight*:

16.     The Defendant's crimes directly implicates both the risk of danger to the community and of flight.  The rationale for detaining an individual is the fear that he will not obey an order to return to court or to obey the law.  The release of any defendant must, therefore, be predicated on the Court's belief that its order will be obeyed.  A  potent sign that the Defendant cannot be trusted to

obey any order of the court, including an order to return to court when required. "As in any human endeavor, what is past is prologue and there can be no better evidence bearing on whether the defendant will appear when required than whether he has appeared when required in the past *and has been faithful to the conditions of his conditional release, probation, or parole*." United States v. Battle, 59 F.Supp.2d 17, 20 (D.D.C. 1999) (emphasis added), Facciola, MJ., citing United States v. Robinson, 27 F.Supp.2d 1116 (S.D.Ind. 1998) "[A]scertaining whether a defendant presents a serious risk of flight requires inquiry into his behavior when released previously on conditional release, probation, or parole." United States v. Battle, supra, id. Consequently, release of Defendant Richards raises an exceptionally severe risk of danger and flight. Every time he sold drugs to an undercover officer, he essentially was thumbing his nose at the Judge in the Superior Court to whom he gave a solemn oath that he would commit no crime while released. The Government submits that Defendant Richards' overall picture is of a person who calculatedly, persistently, and flagrantly breaking his bail, his word to the Court, and the criminal law. Defendant Richards must be deemed to give no more thought to the value of his oath to the Court than to the consequences of his illegal narcotic trafficking for the drug-addled addicts upon whom his crimes prey.

17. Defendant Richards' release is equally fraught with peril to the community. In virtually each instance he utilized others and insulated himself with go-betweens to sell his crack. Indeed, Defendant Richards has shown plainly that he will do what he will to this community. And, in this case, it is not just the community at large, nor some remote place, but the very neighborhood closest to him .

18. Against these facts, Defendant principally relies for his release on community ties to overcome the presumption that he should be held pending trial. Again, the framers of the 1984 Bail

Reform Act thought differently. "The Committee also notes with respect to the fact of community ties that it is aware of the growing evidence that the presence of this factor does not necessarily reflect a likelihood of appearance, and has no correlation with the question of the safety of the community." S.Rep. No. 225, supra, 3207. Nor is it clear why community ties, which stopped Defendant not at all from selling drugs as described above, now will keep them from doing so again.

In summary, Defendant's release constitutes a clear, convincing danger to the community. The order releasing him should be reversed for the reasons set forth above and for any other reasons appearing at a hearing on this motion.

**WHEREFORE**, the United States respectfully prays this Honorable Court to order Defendant held without bail pending trial..

        Respectfully submitted,

        JEFFERY A. TAYLOR
        UNITED STATES ATTORNEY
        D.C. BAR NO. 498-610


By: _____
        MARTIN DEE CARPENTER
        D.C. Bar. No. 431-211
        Assistant United States Attorney
        Organized Crime and Narcotics Trafficking Section
        Room No. 4116
        555 Fourth Street, N.W.
        Washington, D.C. 20530
        202/514-7063

**CERTIFICATE OF SERVICE**

       I HEREBY CERTIFY that a copy of this pleading has been mailed, postage prepaid, this 18th day of September, 2006, to counsel for Defendant Richards, Brian McDaniel, Esquire, by electronic filing kbmassociates@aol.com and by first class mail, postage prepaid, to Suite No. 506, 1211 Connecticut Avenue, Northwest, Washington, D.C. 20036, Office No. (202) 331-0793; Facsimile (202) 331-7004, and by electronic filing to:

Attorney Danielle C. Jahn
Email: dani_jahn@fd.org

Attorney Joanne D. Slaight
Email: jslaight@att.net

                                    MARTIN DEE CARPENTER, Bar No. 431-211
                                    Assistant United States Attorney
                                    Organized Crime & Narcotics Trafficking Section
                                    555 4th Street, N.W., Room No. 4116
                                    Washington, D.C. 20530
                                    (202) 514-7063

                                    Email: martin.carpenter2@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| v. : | Case No. 06-306-01 (TFH) |
| : | Case No. 05-242-01 (unassgnd) |
| MICHAEL DANIEL RICHARDS, : | |
| Defendant. : | Hearing Date: Oct. 19, 2006 |

## ORDER

This matter came before the Court on the Government's motion for review of Orders to release Defendant Richards. Upon consideration of that motion, it is by the Court this _____ day of October 2006.

ORDERED, that the Government's motion be, and the same hereby is GRANTED, and Defendant Richards shall be held without bail pending trial in the above captioned matters.

It is hereby FURTHER ORDERED that the Government's motion be made a part of the record in this case. SO ORDERED.

_____
JUDGE ROSEMARY M. COLLYER
United States District Court for the
District of Columbia

cc:

Martin Dee Carpenter
Assistant United States Attorney
555 4th Street, N.W., Room 4116
Washington, D.C. 20530
Office No. (202) 514-7063
Facsimile   (202) 616-2296
Email: martin.carpenter2@usdoj.gov

Attorney Brian K. McDaniel
Email: bkmassociates@aol.com

Attorney Danielle C. Jahn
Email: dani_jahn@fd.org

Attorney Joanne D.Slaight
Email: jslaight@att.net

Clerk of the Court
United States District Court
for the District of Columbia

Deputy U.S. Marshall In Charge
Federal Cellblock, U.S. Courthouse
(202) 353-0675 (phone)
 (202) 353-0679 (fax)