UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| v. | : | CR  06-306  (EGS) |
| | : | |
| **MICHAEL DANIEL RICHARDS, Et. Al.** | : | |
| Defendant. | : | Hearing Date:  Oct. 23, 2007 |

**NOTICE OF INTENT TO INTRODUCE EVIDENCE OF OTHER CRIMES, WRONGS, OR ACTS UNDER F.R.C.P. 404(b) AND GOVERNMENT'S MOTION TO ADMIT SUCH EVIDENCE AT TRIAL FOR DEFENDANT SHAW**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this notice of its intent to introduce evidence of other crimes, wrongs or acts (commonly referred to as, "404(b) evidence") pursuant to Federal Rule of Criminal Procedure 404(b).  The introduction of this evidence is relevant to prove one or more of the following; motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  In support of this notice, and the motion incorporated herein, the Government relies on the following points and authorities and such other points and authorities as may be cited at any hearing on this matter.  We submit that the evidence of defendants other crimes, wrongs, or acts should be admitted at trial.  We move to admit evidence of the facts of the cases which comprised the defendant's following convictions and arrests:

On January 9, 2003, in Prince Georges county, Maryland, Defendant Junior Shaw was convicted of PWID Cocaine, Distribution of Cocaine and Possession of a Firearm During a Drug Trafficking Crime, was sentenced to 15 years confinement, with 10 years suspended and 5 years unsupervised probation for his offenses with occurred on August 1, 2002.

## BACKGROUND

1. On June 23, 2005, the Grand Jury for the United States District Court for the District of Columbia rendered a three count indictment against Defendants Michael Richards and Donnie Smith, which resulted in Criminal Case No. 05-242, that alleged: In Count One that from December 2001 to May 2002, that they along with others conspired to distribute and possess with the intent to distribute 50 grams or more of cocaine base. Also known as "Crack." In Count Two that on December 6, 2001, the Richards and Smith aided and abetted one another to distribute 50 grams or more of crack. And, in Count Three that on February 19, 2002, that Richards and Smith aided and abetted one another to distribute more than 5 grams of crack.

2. On October 12, 2006, the Grand Jury for the United States District Court for the District of Columbia rendered a three count indictment against Defendants Michael Richards, Russeline Deniel Miles and Christopher Fleming, which resulted in Criminal Case No. 06-306, that alleged: In Count One that from January 2006 through September 2006, the three defendants aided and abetted one another to unlawfully maintain a premises to manufacture, distribute, store and use crack. In Counts Two and Three, on August 18, 2006 and August 29, 2006, respectively, the three Defendants aided and abetted one another to distribute more than 50 grams of crack. In Counts Four and Five, on September 22, 2006 and September 26, 2006, respectively, the three Defendants aided and abetted one another to distribute a detectable amount crack. And, that on September 26, 2006, the date of their arrests, that the three Defendants possessed with the intent to distribute and aided and abetted each other to illegally possess more than 50 grams of crack.

3. This started out as a DEA investigation that they were developing in 2000, targeting the location, 77 Hawaii Avenue, NE, Apartment 204 in November 2000. The Defendant Michael Richards, aka "Wayne," was the primary target of the investigation. On December 6, 2001 at approximately 3:30 p.m., the UC called Richards on 307-3368 and set up the buy for about an hour later. The call was recorded and has been transcribed. At approximately 4:46 p.m., UC and Officer Norris drove to 86 Webster Street NE and park. Donnie Smith talked to them through passenger window. According to the buy report, Smith then went to talk to Richards and motioned the UC over. The OP tape captures Smith talking to the UC in the car. Once in the building, Smith tells the UC to go upstairs. The UC says no and asks where Richards is located. A woman responds he's in Apartment 104 and will be right out. Richards then comes out of Apartment 104 with crack and the Richards and the UC go upstairs to Apartment 201, which is leased to Donnie Smith. The UC then gives Richards $2400 in exchange for 50.6 grams of crack cocaine.

4. On February 19, 2002, at approximately 4:18 p.m., the UC calls Richards on 422-6876[1] and sets up the deal for later that day. The call was recorded and has been transcribed. The UC told Richards to come out to the car because his leg is messed up. At approximately 5:11 p.m., the UC drove up in front of 86 Webster Street, NE and Donnie Smith approached the car. The UC asked where Richards was, and Smith pointed to the window and told the UC to lean over and he could see him. The UC then told Smith to get in the car, and he handed Smith $2400 in exchange for 51.4 grams of crack cocaine. The interior car camera catches this all on tape, including the sound, and the quality is very good. There is also an observation video tape.

5. On August 18, 2006, the Metropolitan Police Department's Narcotics and Special Investigations Division (MPD/NSID), Unit while conducting undercover narcotics operations, in the

---

[1] The old number 607-3368 was changed to this new number on the same account, with the same subscriber and subscriber information as before.

high crime area of 65 Hawaii Avenue, Northeast, Washington, D.C., purchased approximately 61 grams of cocaine base from these coconspirators for $2,400.00, in U.S. currency. Specifically, the purchase was made directly hand-to-hand from Defendant Richards, who transferred the 61 grams of cocaine base to the undercover officer, in exchange for $2,400.00, in U.S. currency. However, at the direction of Defendant Miles, Defendant Richards gave her the $2,400.00, that the undercover officer had paid Defendant Richards for the cocaine base that he received contemporaneously from Defendant Richards. Undercover investigation demonstrates that Defendants Richards, Miles and Fleming, utilized Apartment No. 202, 65 Hawaii Avenue, Northeast, Washington, D.C., to store and sell cocaine base from January 2006 through September 2006 based on evidence gained by the MPD NSID Unit.

6. On August 29, 2006, the Metropolitan Police Department's Narcotics and Special Investigations Division (NSID) conducted a narcotics operation in the high crime area of 65 Hawaii Avenue, Northeast, Washington, D.C. The NSID had identified Defendants and coconspirators Michael Richards, Russeline Miles and Christopher Fleming as major cocaine base, also known as crack distributers in Northeast Washington, D.C. On August 29, 2006, at approximately, 6:30 p.m., the NSID, conducted an undercover narcotics operation which had been set-up directly with Defendant Richards via a recorded telephone call for the purchase of 62 grams of cocaine base. At approximately, 7:30 p.m., an undercover officer (UC) met with Defendants Michael Richards, Russeline Miles and Christopher Fleming, in the front of 65 Hawaii Avenue, Northeast, Washington. While the UC was on a recorded telephone call to Defendant Richards, Defendants Miles and Fleming came out of 65 Hawaii Avenue. Defendant Fleming sat in the back of the UC vehicle, and Defendant Miles sat in the front and she advised that Defendant Richards was inside 65 Hawaii Avenue watching the cocaine base transaction. While still on the recorded telephone call with Defendant Richards, he assured the UC that it was save to deal with Defendants Miles and Fleming,

by stating that they were "family." Accordingly, Defendant Fleming handed the UC 60 grams of cocaine base which concealed inside a black plastic bag. The UC then gave Defendant Miles, $2,400.00, in U.S. currency. Defendant Miles openly counted the money and both Defendants Miles and Fleming exited the UC vehicle.

      7. On September 22, 2006 and September 26, 2006, undercover purchases of cocaine base where made directly from Apartment No. 202 from Defendants Richards, Fleming and Miles. The NSID obtained a District of Columbia Superior Court search warrant for Apartment No. 202, which is leased by Defendant Fleming.

      8. On September 26, 2006, at approximately, 7:00 p.m., the NSID sought to execute the search warrant it had obtained for Apartment No. 202. Additionally, the NSID had set-up a deal for 62 grams of cocaine base via a recorded telephone call to Defendant Richards. Upon their arrival, Defendants Richards, Miles, and Fleming were all standing outside of the building. The NSID based on the facts of investigation sought to detain the three defendants. Defendant Miles spontaneously told the police that she had a large quantity of cocaine base in her upper undergarment and confessed, amongst other important criminal matters, that she and Defendants Richards and Fleming had been distributing cocaine base together for approximately 18 months. Defendant Miles later rendered a detailed video-taped confession. Search incident to arrest of Defendant Richards disclosed $686.00, in U.S. currency and 4 $10.00 ziplocks of cocaine base which ziplocks matched the numerous empty ziplocks which were seized from inside Apartment No. 202, which apartment was leased by Defendant Fleming. All the substances seized and purchased during this undercover cocaine base investigation field-tested positive for cocaine.

      9. The oral and video-taped statements rendered by Defendant Miles formed part of the basis for the Honorable Judge Rosemary Collyer to hold Defendants Richards and Flemings without bond pending trial.

ARGUMENT IN SUPPORT OF ADMITTING THE ABOVE EVIDENCE

The Court employs a two-step test to determine if prior "bad acts" evidence is admissible. Clarke v. United States, 24 F.3d 257, 264 (D.C. Cir. 1994). "The first step requires that the evidence be probative of some material issue other than character." Id.; see also Huddleston v. United States, 485 U.S. 681, 686 (1988). The evidence may be offered for any purpose, including to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, so long as it is not offered solely to prove character of a person in order to show action in conformity therewith. Fed. R. Evid. 404(b). Next, if the contested evidence is offered for a permissible purpose, "the second step requires that the evidence not be inadmissible under Rule 403." Clarke, supra, 24 F.3d at 264. In other words, the "probative value of the evidence [must] not be 'substantially outweighed' by its potential prejudice." United States v. Miller, 895 F.2d 1431, 1435 (D.C. Cir.) (quoting Huddleston, 485 U.S. at 687), cert. denied, 498 U.S. 825 (1990).[2]

Evidence of the defendants prior weapons and drug offense(s) is offered to illuminate essential elements of the offenses for which each defendant has been charged and which the Government must prove beyond a reasonable doubt. Evidence of defendants past drug and weapons possessions and dealings are admissible on the issues of motive, intent, preparation, plan, knowledge, identity, and absence of mistake or accident, as well as to discount the defense of "innocent presence." Evidence that the defendants had prior contact with weapons and drug

---

[2] It should be noted that the standard of proof for establishing admissibility of the facts of prior bad acts is less than in the underlying criminal case. The Supreme Court in Huddleston held, "in the Rule 404(b) context, similar act evidence is relevant only if the jury can *reasonably conclude* that the act occurred and that the defendant was the actor." Huddleston, 485 U.S. at 689, (emphasis added). Thus, even if a jury could not find beyond a reasonable doubt that a crime was committed and that the defendant committed it, it could still reasonably conclude that a defendant committed a particular act for the purposes of 404(b) admissibility. See, Dowling v. United States, 493 U.S. 342, 349 (1990). Further, The District Court's determination whether to admit 404(b) evidence is reviewed for abuse of discretion. United States v. Springs, 936 F.2d 1330, 1333 (D.C. Cir. 1991); United States v. Watson, 894 F.2d 1345, 1349 (D.C. Cir. 1990).

possession and sales is powerful evidence of not only familiarity with the substance but also its value, method of distribution, and the importance of secretion of the contraband and the proceeds derived therefrom. These factors all shed light upon the defendants motives and intentions to possess, distribute, and profit from the manipulation of the drugs trafficked during the life of the charged conspiracy (and ending with the recovery of large amounts of narcotics during the execution of various a search warrant.).   United States v. Washington, 969 F.2d 1073, 1081 (D.C. Cir. 1992)(evidence of defendant's prior drug transaction is probative of intent, knowledge and plan on defendant's part); United States v. Rodgers, 918 F.2d 207, 210 (D.C. Cir. 1990) (evidence of other drug deal admissible to show knowledge, intent, and the absence of mistake); see also United States v. Harrison, 679 F.2d 942, 948 (D.C. Cir. 1982) (because testimony concerning defendant's past drug dealing established a course of dealing by defendant, such evidence was admissible to prove motive, intent, preparation, plan, knowledge, identity, and absence of mistake); United States v. Childs, 598 F.2d 169, 174 (D.C. Cir. 1979); United States v. Gallo, 543 F.2d 361, 365 (D.C. Cir. 1976). Although the evidence reveals defendants participation in other criminal acts, appellate courts have held that, "under Rule 404(b), any purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered solely to prove character." Miller, supra, 895 F.2d at 1436; see also Clarke, 24 F.3d at 264 (only impermissible use of other acts evidence is to show character).

     Moreover, 404(b) evidence is admissible to establish motive, identity, common scheme or plan, opportunity, and absence of mistake or accident.  The introduction of this evidence would be permissible, the government contends, for any of these purposes. Here, the defendants are charged with conspiracy as well as with substantive narcotics counts.  Thus, in addition to establishing knowledge and intent, the evidence of the defendant's prior contacts and convictions for drug offenses are admissible to establish that the defendant sought to possess the drugs with the intention

of distributing them.  Evidence of defendants prior drug possession and sales focuses on the pivotal issues of knowledge and intent.

The 404(b) evidence establishes that the defendants in the prior case(s) engaged in the drug trade.  The fact that the defendants conviction(s) and arrests may have occurred several years ago is not determinative of admissibility.  Where the similarity between the 404(b) evidence and the facts of the charged offense are closely related, the courts weigh in favor of admitting the evidence.  United States v. Mounts, 35 F.3d 1208, 1214-1215 (7th Cir. 199)(7 years between bad act and charged conduct sufficiently close nexus for admissibility); United States v. Hadley, 918 F.2d 848, 851 (9th Cir. 1990) (approving use of evidence 10 years old because of similarity of conduct); United States v. Martino, 759 F.2d 998, 1005 (2nd Cir. 1985) (11 year old youth act conviction properly admitted on the issue of defendant's knowledge and intent to distribute narcotics);  United State v. Lopez-Martinez, 725 F.2d 471, 477 (9th Cir.), cert. denied 469 U.S. 837 (1984)  (fact that eight years separated the 404(b) case from the arrest-generated case not controlling where the facts of the first case were similar enough to the second to be relevant.).  See also United States v. Hinton, 31 F.3d 817, 823 (9th Cir. 1994) (finding similarity between acts warranted admission of 404(b) evidence).     In the instant case, the "other crimes" evidence is probative on the issues of the defendant's motive, knowledge, intent and absence of mistake.  At trial, it would be insufficient for the government to simply prove that the defendants were present when contraband was discovered or that they arranged for the delivery of crack.  The government has the burden of showing a nexus between the defendant and his intention to possess the illicit drugs, sell the illicit drugs, or contribute to the success of others to sell illicit drugs.    Further, this evidence makes it more likely that the defendants knew that he was intentionally trafficking in narcotics on the dates charged in the indictment.

The admission of prior wrongs, in this case conviction, shows that the defendants, "[were] not some hapless fools mistakenly caught up in an overzealous law enforcement action." United States v. Kreiser, 15 F.3d 635, 640 (7th Cir. 1994). See, e.g., United States v. Moore, 732 F.2d 983, 989 (D.C. Cir. 1984) (finding prior drug transactions probative of intent to participate in future transactions). "The oftener a like act has been done, the less probable it is that it could have been done innocently." 2 J. Wigmore on Evidence sec. 312 (3d ed. 1940).

The similarities of conduct evidenced by defendants convictions and arrests are compelling, and warrant the admission of this evidence. Moreover, careful use of limiting instructions following introduction of this evidence and at the close of the case will effectively eliminate any prejudice to the defendants or misuse of the evidence by the jury. United States v. Ruffin, 40 F.3d 1296, 1298 (D.C. Cir. 1994). Any potential prejudice flowing from admitting this evidence can be cured by the Court giving an appropriate jury instruction. "'[I]t is the law, pure and simple, that jury instructions can sufficiently protect a defendant's interest in being free from undue prejudice.'" United States v. Perholtz, 842 F.2d 343, 361 (D.C. Cir.), cert. denied, 488 U.S. 821 (1988) (citation omitted). Accord Zafiro v. United States, 506 U.S. 534, 540-41.

WHEREFORE, for the foregoing reasons, the Government respectfully moves and requests that the Court admit the above-described evidence pursuant to Federal Rule of Evidence 404(b).

    Respectfully submitted,

    JEFFERY A. TAYLOR
    UNITED STATES ATTORNEY
    D.C. BAR NO. 498-610


By: _____
    MARTIN DEE CARPENTER
    Assistant United States Attorney
    Organized Crime and Narcotics Trafficking Section

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this pleading has been served upon defense counsel Attorney Andrea Antonelli by facsimile, this 16th day of October, 2007, and by electronic filing to:

Attorney Brian K. McDaniel
Email: kbmassociates@aol.com

Attorney Danielle C. Jahn
Email: dani_jahn@fd.org

Attorney Joanne D. Slaight
Email: jslaight@att.net

Attorney Andrea Patricia Antonelli
Email: apantonelli@verizon.net

Attorney Richard Alan Seligman
Email: rickselig@aol.com

Attorney Jerry Ray Smith
Email: jerryraysmith@verizon.net

MARTIN DEE CARPENTER, Bar No. 431-211
Assistant United States Attorney
Organized Crime & Narcotics Trafficking Section
555 4th Street, N.W., Room No. 4116
Washington, D.C. 20530
Office No. (202) 514-7063
Facsimile No. (202) 514-8707

Email: martin.carpenter2@usdoj.gov