## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **CR 06-306 (EGS)** |
| | : | |
| **MICHAEL DANIEL RICHARDS, Et. Al.** | : | |
| **Defendant.** | : | **Hearing Date: Oct. 23, 2007** |

## GOVERNMENT'S OMNIBUS OPPOSITION
## TO DEFENDANTS GANT'S AND SHAW"S MOTIONS

***COMES NOW***, the United States of America, by and through its Attorney, the United States Attorney for the District of Columbia, to respectfully oppose Defendant Gregory Gant's motion to Suppress the Evidence Seized Pursuant to a Search Warrant on November 21, 2000, and we oppose the substance of Defendant Shaw's motion to adopt and join Defendant Fleming's Motion to Sever Counts (Docket Entry No. 53) and Defendant Gant's Motion to Compel Disclosure Regarding Government Informers (Docket Entry No. 53) and Defendant Shaw's Motion to Sever Defendants, and, in support thereof, we submit as follows:

## BACKGROUND

1.  On June 23, 2005, the Grand Jury for the United States District Court for the District of Columbia rendered a three count indictment against Defendants Michael Richards and Donnie Smith, which resulted in Criminal Case No. 05-242, that alleged: In Count One that from December 2001 to May 2002, that they along with others conspired to distribute and possess with the intent to distribute 50 grams or more of cocaine base. Also known as "Crack." In Count Two that on December 6, 2001, the Richards and Smith aided and abetted one another to distribute 50 grams or

more of crack. And, in Count Three that on February 19, 2002, that Richards and Smith aided and abetted one another to distribute more than 5 grams of crack.

    2. On October 12, 2006, the Grand Jury for the United States District Court for the District of Columbia rendered a three count indictment against Defendants Michael Richards, Russeline Deniel Miles and Christopher Fleming, which resulted in Criminal Case No. 06-306, that alleged: In Count One that from January 2006 through September 2006, the three defendants aided and abetted one another to unlawfully maintain a premises to manufacture, distribute, store and use crack. In Counts Two and Three, on August 18, 2006 and August 29, 2006, respectively, the three Defendants aided and abetted one another to distribute more than 50 grams of crack. In Counts Four and Five, on September 22, 2006 and September 26, 2006, respectively, the three Defendants aided and abetted one another to distribute a detectable amount crack. And, that on September 26, 2006, the date of their arrests, that the three Defendants possessed with the intent to distribute and aided and abetted each other to illegally possess more than 50 grams of crack.

    3. This started out as a DEA investigation that they were developing in 2000, targeting the location, 77 Hawaii Avenue, NE, Apartment 204 in November 2000. The Defendant Michael Richards, aka "Wayne," was the primary target of the investigation. On December 6, 2001 at approximately 3:30 p.m., the UC called Richards on 307-3368 and set up the buy for about an hour later. The call was recorded and has been transcribed. At approximately 4:46 p.m., UC and Officer Norris drove to 86 Webster Street NE and park. Donnie Smith talked to them through passenger window. According to the buy report, Smith then went to talk to Richards and motioned the UC over. The OP tape captures Smith talking to the UC in the car. Once in the building, Smith tells the UC to go upstairs. The UC says no and asks where Richards is located. A woman responds he's in

Apartment 104 and will be right out.  Richards then comes out of Apartment 104 with crack and the Richards and the UC go upstairs to Apartment 201, which is leased to Donnie Smith.  The UC then gives Richards $2400 in exchange for 50.6 grams of crack cocaine.

4.  On February 19, 2002, at approximately 4:18 p.m., the UC calls Richards on 422-6876[1] and sets up the deal for later that day.  The call was recorded and has been transcribed.  The UC told Richards to come out to the car because his leg is messed up.  At approximately 5:11 p.m., the UC drove up in front of 86 Webster Street, NE and Donnie Smith approached the car.  The UC asked where Richards was, and Smith pointed to the window and told the UC to lean over and he could see him.  The UC then told Smith to get in the car, and he handed Smith $2400 in exchange for 51.4 grams of crack cocaine.  The interior car camera catches this all on tape, including the sound, and the quality is very good.  There is also an observation video tape.

5.  On August 18, 2006, the Metropolitan Police Department's Narcotics and Special Investigations Division (MPD/NSID), Unit while conducting undercover narcotics operations, in the high crime area of 65 Hawaii Avenue, Northeast, Washington, D.C., purchased approximately 61 grams of cocaine base from these coconspirators for $2,400.00, in U.S. currency.  Specifically, the purchase was made directly hand-to-hand from Defendant Richards, who transferred the 61 grams of cocaine base to the undercover officer, in exchange for $2,400.00, in U.S. currency.  However, at the direction of Defendant Miles, Defendant Richards gave her the $2,400.00, that the undercover officer had paid Defendant Richards for the cocaine base that he received contemporaneously from

---

[1]The old number 607-3368 was changed to this new number on the same account, with the same subscriber and subscriber information as before.

Defendant Richards.  Undercover investigation demonstrates that Defendants Richards, Miles and Fleming, utilized Apartment No. 202, 65 Hawaii Avenue, Northeast, Washington, D.C., to store and sell cocaine base from January 2006 through September 2006 based on evidence gained by the MPD NSID Unit.

6.    On August 29, 2006, the Metropolitan Police Department's Narcotics and Special Investigations Division (NSID) conducted a narcotics operation in the high crime area of 65 Hawaii Avenue, Northeast, Washington, D.C.  The NSID had identified Defendants and coconspirators Michael Richards, Russeline Miles and Christopher Fleming as major cocaine base, also known as crack distributers in Northeast Washington, D.C.  On August 29, 2006, at approximately, 6:30 p.m., the NSID, conducted an undercover narcotics operation which had been set-up directly with Defendant Richards via a recorded telephone call for the purchase of 62 grams of cocaine base.  At approximately, 7:30 p.m., an undercover officer (UC) met with Defendants Michael Richards, Russeline Miles and Christopher Fleming, in the front of 65 Hawaii Avenue, Northeast, Washington. While the UC was on a recorded telephone call to Defendant Richards, Defendants Miles and Fleming came out of 65 Hawaii Avenue.  Defendant Fleming sat in the back of the UC vehicle, and Defendant Miles sat in the front and she advised that Defendant Richards was inside 65 Hawaii Avenue watching the cocaine base transaction.  While still on the recorded telephone call with Defendant Richards, he assured the UC that it was save to deal with Defendants Miles and Fleming, by stating that they were "family."  Accordingly, Defendant Fleming handed the UC 60 grams of cocaine base which concealed inside a black plastic bag.  The UC then gave Defendant Miles, $2,400.00, in U.S. currency.  Defendant Miles openly counted the money and both Defendants Miles and Fleming exited the UC vehicle.

7.   On September 22, 2006 and September26, 2006, undercover purchases of cocaine base where made directly from Apartment No. 202 from Defendants Richards, Fleming and Miles.  The NSID obtained a District of Columbia Superior Court search warrant for Apartment No. 202, which is leased by Defendant Fleming.

8.   On September 26, 2006, at approximately, 7:00 p.m., the NSID sought to execute the search warrant it had obtained for Apartment No. 202.  Additionally, the NSID had set-up a deal for 62 grams of cocaine base via a recorded telephone call to Defendant Richards.  Upon their arrival, Defendants Richards, Miles, and Fleming were all standing outside of the building.  The NSID based on the facts of investigation sought to detain the three defendants.  Defendant Miles spontaneously told the police that she had a large quantity of cocaine base in her upper undergarment and confessed, amongst other important criminal matters,  that she and Defendants Richards and Fleming had been distributing cocaine base together for approximately 18 months.  Defendant Miles later rendered a detailed video-taped confession.  Search incident to arrest of Defendant Richards disclosed $686.00, in U.S. currency and 4 $10.00 ziplocks of cocaine base which ziplocks matched the numerous empty ziplocks which were seized from inside Apartment No. 202, which apartment was leased by Defendant Fleming.  All the substances seized and purchased during this undercover cocaine base investigation field-tested positive for cocaine.

9.   The oral and video-taped statements rendered by Defendant Miles formed part of the basis for the Honorable Judge Rosemary Collyer to hold Defendants Richards and Flemings without bond pending trial.

10.   On Tuesday, June 5, 2007, the grand jury returned a superseding indictment which extensively combined the 05 and 06 indictments and added additional defendants.

**<u>ARGUMENT</u>**

**Defendant Gant's and Shaw's Motion to Suppress the Evidence Seized on November 30, 2000:**

We submit that Defendants Gant and Shaw do not have standing to move to suppress the evidence seized from 77 Hawaii Avenue, Apartment No. 204, Northeast, Washington, D.C. on November 30, 2000. Despite the fact that they are both charged with conspiracy and aiding and abetting the "crack house" at that location neither were present at the time of the execution of the search warrant. Accordingly, they must established standing. Additionally, to the extent that they have joined in the motion to suppress evidence seized on September 26, 2006 filed by Defendant Fleming (Docket Entry No. 62), we incorporate by reference the argument(s) that we made in opposition to Defendant Fleming's motion to suppress evidence.

On November 30, 2000, the 4th District Vice office executed a search warrant at 77 Hawaii Avenue, N.E., Washington, D.C., Apartment No. 204. UC Officer Derrick Wallace had advised the search team that Richards kept his stash on the roof of the apartment building. Michael Richards, Conroy Forbes, Russeline Miles, Anne-Marie Brown (a crack addict) were arrested on gun and drug charges. MPD seized 26.7 grams of crack cocaine (17 individual ziplock bags of crack cocaine), 64 rounds of assorted ammo, approximately $9,009.00, in U.S. currency, and a loaded Biretta .40 caliber semiautomatic pistol.

**Defendant Gant's and Shaw's Motion Severance of Counts and Defendants:**

The United States has provided substantial discovery to Defendant Gant which clearly discusses the underlying facts of his conspiracy. Specifically, we note that after the December 20, 2001 purchase of cocaine base, Curtis Prince, MPD 4D vice was detailed to the ATF. UC Derrick Wallace on February 1, 2002, showed up at 86 Webster St unannounced and made a buy Greg Gant.

The UC wore a jacket camera.  UC Wallace incorrectly identified another man, Lee Greg Gant, as the person who sold to him.  UC Wallace was later shown a picture of Greg Gant, who he then positively identified as the seller and later phone records confirm this.  The officers made two more buys, one from Donnie Smith, who pointed to Richards at the window, and another directly from Richards.  Each of these buys of more than 50 grams are clearly captured on videotape.    On August 15, 2000, the undercover, Detective Phillips,  placed two recorded telephone calls to 202- 832-6519, in an effort to contact a black female subject name Cathy (identified as Russeline Miles). Each time the undercover call an adult male with a Jamaican accent (identified as Michael Richards) answered the phone and referred to himself as Cathy's husband. Richards aka the male subject informed the undercover to call Cathy tomorrow morning.

On August 16, 2000, the undercover placed two recorded telephone calls to 202 832-6519. The undercover spoke with Miles aka Cathy and negotiated the purchase of one ounce of crack cocaine for $1,200.00. Miles informed the undercover to meet her at the intersection of North Capitol Street and Allison. Once at the location, Miles approached the undercover vehicle and entered. Miles then handed a plastic sandwich bag containing the cocaine and in return the undercover handed Miles $1,200.00 in prerecorded funds. The total weight of the purchased narcotics was 22.2grams of cocaine HCL,

On August 31, 2000, the undercover, Detective Phillips, placed a recorded telephone call to a subject name Arthur Powell (later identified as Michael Richards).  On September 1, 2000, the undercover placed a recorded telephone call to Richards aka Arthur Powell and Miles aka Cathy. The undercover negotiated the purchase of cocaine in three recorded conversations on September 1, 2000.  On September 6, 2000, the undercover placed a recorded telephone call to 202- 832-6519.

The undercover spoke with a male subject who identified himself as "Paul," who the undercover believed to actually be Richards aka Arthur Powell. The undercover engaged in a conversation about the purchase of 125 grams of crack cocaine from Richards. The transaction was scheduled for September 7, 2000.

On September 7, 2000, the undercover, Detective Phillips, placed a recorded telephone call to Russeline Miles aka Cathy at 202 832-6519. The undercover spoke with Miles and confirmed a previously arranged purchase of crack cocaine. The undercover then drove to the area of 77 Hawaii Avenue, N.E., Washington, D.C. The target Miles walked over the undercover vehicle and entered. Miles aka Cathy then handed a brown paper bag which contained approximately 125.4 grams of cocaine HCL, in exchange for $3,700.00 in prerecorded funds.

On September 26, 2000, at BWI Airport, Maryland, Mary Holland and Vanrex McCullough were arrested by U.S. Customs for smuggling approximately two kilograms of cocaine into the US. They each had almost one kilogram each stored in their travel bags. Additionally, there were nine grams of heroin in McCullough's travel bag.

On November 30, 2000, the 4th District Vice office executed a search warrant at 77 Hawaii Avenue, N.E., Washington, D.C., Apartment No. 204. UC Officer Derrick Wallace had advised the search team that Richards kept his stash on the roof of the apartment building. Michael Richards, Conroy Forbes, Russeline Miles, Anne-Marie Brown (a crack addict) were arrested on gun and drug charges. MPD seized 26.7 grams of crack cocaine (17 individual ziplock bags of crack cocaine), 64 rounds of assorted ammo, approximately $9,009.00, in U.S. currency, and a loaded Biretta .40 caliber semiautomatic pistol. On February 15, 2001, Charmaine Lee was arrested at BWI Airport for smuggling one kilogram of cocaine. On October 30, 2001, MPD undercover officer, Derrick

Wallace, purchased 11.8 grams of crack cocaine, in exchange for $600.00, in prerecorded MPDC funds from Junior Shaw, inside of 90 Webster Street, N.E., Washington, D.C., Apartment No. 104. Richards was present and directed Shaw to serve the UC.  The transaction was tape recorded.

On November 9, 2001, MPD undercover officer, Derrick Wallace, purchased 11.6 grams of crack cocaine, in exchange for $600.00, in prerecorded MPDC funds from Michael Richards and Junior Shaw in front of 86 Webster Street, N.E., Washington, D.C.  On November 23, 2001, MPD undercover officer, Derrick Wallace, purchased 47.4 grams of crack cocaine, in exchange for$2,400.00, in prerecorded MPDC funds from Michael Richards inside the hallway of 86 Webster Street, N.E., Washington, D.C.  The UC called  Richards at approximately 4:10 p.m.[2]  The UC asked for Richards and set up the deal for later that day.  The conversation was recorded, and has been transcribed.  At approximately 6:15 p.m., the UC Wallace drove with Vincent Norris to 86 Webster Street N.E.  The UC met with Richards outside in front of 86 Webster Street, and they then went inside for the sale.  The UC gave Richards  $2400.00, in exchange for  47.4 grams of crack. Officers Curtis Prince and Jasper Jackson were OP.

On December 6, 2001, MPD undercover officer, Derrick Wallace, purchased 50.6 grams of crack cocaine, in exchange for $2,400.00, in prerecorded MPDC funds from Michael Richards and Donnie Smith inside of 86 Webster Street, N.E., Apartment Nos. 204 and 104.  On December 6, 2001, at approximately 3:30 p.m., the UC called Richards on 202-307-3368 and set up the buy for

---

[2]The number called was 202-607-3368.  This phone is listed to a Greg Mitchell.  However, the address given on the account is that of Greg Gant's, except it says NW rather than NE.  Also the social security number given is that of Gant's, with the except of two numbers which are inverted.  As mentioned above, Gant appears on the OP tape of the December 20, 2002 purchase 2 in front of the building and also makes a later sale to the UC on February 1, 2002.

about an hour later.  The call was recorded and has been transcribed.  At approximately 4:46 p.m., the UC and Norris drove to 86 Webster Street N.E. and parked.  Donnie Smith talked to them through the passengers' window.  Smith then went to talk to Richards and motioned the UC over.  Once in the building, Smith told Wallace to go upstairs.  Wallace said no and asked where Richards was located.  Miles responded he's in Apartment 104 and will be right out.  Richards then came out of Apartment 104 with crack and Richards and Wallace went upstairs to Apartment 204, which is leased to Donnie Smith.  Wallace then gave Richards $2400.00 in exchange for 50.6 grams of crack cocaine.

On December 20, 2001, MPD undercover officer, Derrick Wallace, purchased 51.4 grams of crack cocaine, in exchange for $2,400.00, in prerecorded MPDC funds from Michael Richards and Donnie Smith inside the hallway of 82 Webster Street, N.E., Washington, D.C.  UC made a recorded and transcribed telephone call to Richards at 3:47 p.m. and arranged to meet with Richards at approximately 5:00 p.m.  At approximately 5:09 p.m., the UC and Norris drove into the block and parked in front of 86 Webster Street, N.E.  The UC rolled down the window and asked Gregory Gant where was Richards?  Gant waved the UC over.  The UC met with Gant and Richards in front of 82 Webster Street.  Richards told the UC to hold on and told him to wait in front of 86 Webster Street.  Richards then went inside Apartment No. 202, 82 Webster Street, came out and told UC to come inside 82 Webster.  Once inside, in the hallway, Richards gave the UC 51.4 grams of crack cocaine in exchange for $2400.00.

On February 1, 2002, MPD undercover officer, Derrick Wallace, purchased 55 grams of crack cocaine, in exchange for $2,400.00, in prerecorded MPDC funds from Gregory Gant, at the

direction of Michael Richards, inside the hallway of 86 Webster Street, N.E., Washington, D.C.  On

February 1, 2002, they made the buy directly from Gregory Gant, and used a jacket camera.

On February 19, 2002, MPD undercover officer, Derrick Wallace, purchased 41.6 grams of

crack cocaine, in exchange for $2,400.00, in prerecorded MPDC funds from Donnie Smith outside

of 86 Webster Street, N.E., Washington, D.C.  Donnie Smith was directed to make the deal by

Michael Richards who was watching the transaction from the window of Apartment 204.  On

February 19, 2002, at approximately 4:18 p.m., the UC called Richards on 202-422-6876[3] and set

up the deal for later that day.  The call was recorded and has been transcribed.  UC Wallace told

Richards to come out to the car because his leg was messed up.  At approximately 5:11 p.m., UC

Wallace drove to the front of 86 Webster Street, N.E.  Donnie Smith approached the car.  The UC

asked where was Richards and Smith pointed to the window and told the UC to lean over and he can

see him.  The UC then told Smith to get in the car and the UC handed Smith $2400.00, in exchange

for 41.6 grams of crack cocaine.

On May 2, 2002, MPD undercover officer, Derrick Wallace, purchased 53.8 grams of crack

cocaine, in exchange for $2,400.00, in prerecorded MPDC funds from Michael Richards in front of

90 Webster N.E., inside an undercover vehicle while the transaction was video and audio taped.  On

May 2, 2002, at approximately 5:05 p.m., the UC called Richards on 202-422-6876, to set up the

deal for later that day.  The call was recorded and has been transcribed.  UC Wallace again told

Richards to meet him in the car because of his leg was still messed up.  UC Wallace also told

Richards not to send the last guy out this time.  At approximately 6:00 p.m., UC Wallace drove up

---

[3]The old number 202-607-3368 was changed to this new number on the same account, with the same subscriber and subscriber information as before.

in front of 90 Webster Street, N.E.   Richards got into the car and handed the UC 53.8 grams of crack in exchange for $2400.00.

On August 18, 2006, the NSID while conducting undercover narcotics operations purchased approximately 61 grams of cocaine base from these coconspirators for $2,400.00, in U.S. currency. Specifically, the purchase was made directly hand-to-hand from Defendant Richards, who transferred the 61 grams of cocaine base to the undercover officer, in exchange for $2,400.00, in U.S. currency. However, at the direction of Defendant Miles, Defendant Richards gave her the $2,400.00, that the undercover officer paid Defendant Richards for the cocaine base that he received contemporaneously from Defendant Richards.  Undercover investigation demonstrates that Defendants Richards, Miles and Fleming, utilized Apartment No. 202, 65 Hawaii Avenue, Northeast, Washington, D.C., to store and sell cocaine base.  On this instance it was Fleming who went to No. 202 to retrieve the crack for Richards.  The initial telephone call was made from UCO Wallace to Richards which was recorded. The actual transaction was video taped in back of the apartment building for No. 202.

On August 29, 2006, the NSID conducted a narcotics operation in the high crime area of 65 Hawaii Avenue, Northeast, Washington, D.C.   The NSID had identified Defendants and coconspirators Michael Richards, Russeline Miles and Christopher Fleming as major distributors for cocaine base, also known as crack, in Northeast Washington, D.C.  On August 29, 2006, at approximately, 6:30 p.m., the NSID, conducted an undercover narcotics operation which had been set-up directly with Defendant Richards by UCO Wallace via a recorded telephone call for the purchase of 62 grams of cocaine base.  At approximately, 7:30 p.m., UCO Wallace met with Defendants Michael Richards, Russeline Miles and Christopher Fleming, in the front of 65 Hawaii Avenue, Northeast, Washington.  While the UCO Wallace was on a recorded telephone call to

Defendant Richards, Defendants Miles and Fleming came out of 65 Hawaii Avenue. Defendant Fleming sat in the back of the UC vehicle, and Defendant Miles sat in the front and she advised that Defendant Richards was inside 65 Hawaii Avenue watching the cocaine base transaction. While still on the recorded telephone call with Defendant Richards, he assured the UCO Wallace that it was safe to deal with Defendants Miles and Fleming, by stating that they were "family." Accordingly, Defendant Fleming handed the UCO Wallace 60 grams of cocaine base which concealed inside a black plastic bag. The UCO Wallace then gave Defendant Miles, $2,400.00, in U.S. currency. Defendant Miles openly counted the money and both Defendants Miles and Fleming exited the UC vehicle.

On September 22, 2006, at approximately 4:00 p.m., UCO Wallace made an undercover purchase of 4 grams of cocaine base for $400.00 from Apartment No. 202, and directly from Defendant Richards, while Defendants Fleming and Miles were present. The three were discussing the fact that they were eagerly anticipating the arrival of a new shipment, so they gave UCO Wallace a small "taste" so that he could earn some pocket change until the load came. NSID obtained a District of Columbia Superior Court search warrant for Apartment No. 202, which is leased by Defendant Fleming. On September 26, 2006, at approximately 11:00 a.m., UCO Wallace purchased another 4 grams of cocaine base for $400.00 out of Apartment No. 202 from Defendant Miles, at the direction of Richards, who was present. Defendant Fleming was not present, but No. 202 is his apartment that he allows Richards and Miles to utilize to process cocaine into cocaine base and to sell the narcotics. Defendant Richards commented that they were expecting to have the new load at approximately 6:00 p.m. that same night. So, NSID planned a buy/bust operation for that evening.

On September 26, 2006, at approximately, 7:00 p.m., the NSID sought to execute the search warrant it had obtained for Apartment No. 202.  Additionally, the NSID had set-up a deal for 62 grams of cocaine base via a recorded telephone call to Defendant Richards.  Upon their arrival, Defendants Richards, Miles, and Fleming were all standing outside of the front of the building.  The NSID based on the facts of investigation sought to detain the three defendants.  As the police approached Fleming handed Miles an object, which she stuffed into her bra area.  Contemporane-ously, as the police moved in to affect their arrests, Defendant Miles spontaneously told the police that she had a large quantity of cocaine base in her upper undergarment and later confessed following Miranda on videotape that she and Defendants Richards and Fleming had been distributing cocaine base together for approximately 18 months.

Search incident to arrest of Defendant Richards disclosed $686.00, in U.S. currency and 4 $10.00 ziplocks of cocaine base which ziplocks matched the numerous empty ziplocks which were seized from inside Apartment No. 202, which apartment was leased by Defendant Fleming. Recorded telephone call to set-up deal with Roberts.  DEA Lab No. LA-143.  All the substances seized and purchased during this undercover cocaine base investigation field-tested positive for cocaine.  Det. Quigley searched Miles.  Det. Lewis searched Richards.

**Defendant Gant's and Shaw's Motions for Severance of Defendants and Counts:**

In Bruton v. United States, 391 U.S. 123, 188, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the United States Supreme Court held that a defendant is deprived of his rights under the Confrontation Clause when his codefendant's incriminating confession is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant.  However, "The decision to sever cases is committed to the sound discretion of the trial court.  Defendant Richards asserts

that the admission at his trial of defendant Miles' statements which implicate him will violate his Confrontation Clause rights under <u>Bruton</u>. However, Bruton has no application here, because the statements are admissible as statements against penal interest.

In <u>Bruton</u>, the government sought to admit the codefendant's confession only against the codefendant, such that, as to the defendant, the statement was inadmissible hearsay. In finding that the admission of this statement violated the Confrontation Clause, <u>Bruton</u> expressly declined to state an opinion as to whether its rule would apply to those cases where a "recognized exception to the hearsay rule" would have otherwise permitted admission of the statement. 391 U.S. at 128 n.3. In such cases, e.g., where the statements are admissible as statements against penal interest, Courts have repeatedly recognized that if that statements satisfied a recognized hearsay exception based on the statements' presumed reliability, that reliability in turn would satisfy the concerns of the Confrontation Clause. Thus, in such a case, a trial court does not abuse its discretion in denying a severance motion on <u>Bruton</u> grounds. <u>United States v. Gibson</u>, 409 F.3d 325, 337-38 (6th Cir. 2005) (holding constitutionally admissible a non-testifying codefendant's non-testimonial statement implicating the accused)); see also <u>United States v. Hamilton</u>, 19 F.3d 350, 357 (7th Cir.) (upholding denial of severance on Bruton grounds where codefendant's statement was properly admitted under Fed. R. Evid. 804(b)(3) (hearsay exception for statements against interest)), cert. denied, 514 U.S. 986 (1994). Thus, defendant Richards has not demonstrated manifest prejudice in a joint trial, so as to establish an abuse of discretion in the trial court's denial of severance.

Defendant Gant and Shaw claim that there case demands severance because his case, albeit overwhelming, is not as compelling as their coconspirators. In codefendant cases, Fed. R. Crim. P. 8(b) controls joinder of both offenses and defendants. <u>United States v. Perry</u>, 731 F.2d 985, 989

(D.C. Cir. 1984); United States v. Jackson, 562 F.2d 789, 793-94 (D.C. Cir. 1977). This Circuit

construes Rule 8(b) broadly in favor of joinder. United States v. Gibbs, 904 F.2d 52, 56 (D.C. Cir.

1990) ("[T]his court . . . has repeatedly declared that joint trials may be preferred, given the heavy

and increasing criminal case load in our trial courts."); United States v. Perry, 731 F.2d at 991;

Jackson, 562 F.2d at 796-97; United States v. Hines, 455 F.2d 1317, 1334 (D.C. Cir. 1971), cert.

denied, 406 U.S. 975 (1972). In short, "a substantial public interest supports joint trial." United

States v. Friedman, 445 F.2d 1076, 1082 (9th Cir.), cert. denied, 404 U.S. 958 (1971). Jackson, 562

F.2d at 796-97; Hines, 455 F.2d at 1334, cert. denied, 406 U.S. 975 (1972).

Generally, persons charged in a conspiracy should be tried together. See, e.g., United States

v. Boyd, 610 F.2d 521 (8th Cir. 1979), cert. denied, 444 U.S. 1089 (1980). "Rarely, if ever, will it

be improper for co-conspirators to be tried together." United States v. Stephenson, 924 F.2d 753,

761 (8th Cir. 1991). Furthermore, severance is not required or favored even when all co-conspirators

are not charged in every substantive count of the indictment, Schaffer v. United States, 362 U.S. 511,

512-13 (1960); United States v. Leach, 613 F.2d 1295, 1303 (5th Cir. 1980), or when the charged

co-conspirators did not participate in all phases of the conspiracy, Blumenthal v. United States, 332

U.S. 539, 556-57 (1947); Leach, 613 F.2d at 1299. There is no mandate that severance be granted

if one defendant's role was smaller or less important than another's. United States v. Nersesian, 824

F.2d 1294 (2d Cir. 1987); United States v. Ianniello, 621 F. Supp. 1455, 1477-78 (S.D.N.Y. 1985),

aff'd, 808 F.2d 84 (2d Cir. 1986), cert. denied, 483 U.S. 106 (1987) (fact that defendant plays minor

role in a conspiracy does not entitle him to severance).

This Court has wide discretion in determining joinder. United States v. Butler, 822 F.2d

1191, 1196 (D.C. Cir. 1987). One of the main factors courts should consider in making its joinder

determination is the furtherance of the judicial system's strong and legitimate interest in efficient and expeditious proceedings. United States v. Long, 905 F.2d 1572 (D.C. Cir. 1990). Joinder of counts and defendants is designed to promote judicial economy and efficiency by avoiding multiple trials, where that can be accomplished without substantial prejudice to the rights of the defendants to a fair trial. Bruton v. United States, 391 U.S. 123, 131 n.6 (1968). Factors that the court should consider include: (1) the presentation of the same evidence; (2) testimony from the same witnesses; and (3) the same illegal acts. United States v. Manner, 997 F.2d 317 (D.C. Cir. 1989), cert. denied, 493 U.S. 1062 (1990); United States v. Tarantino, 946 F.2d 1384 (D.C. Cir. 1988).

All defendants are charged in the Conspiracy count and the "crack house" count of the superseding indictment and are charged with specific counts which they committed in furtherance of the conspiracy. The evidence against each defendant overlaps substantially with evidence to be presented against the codefendants. A number of agents of the Drug Enforcement Administration, ATF Agency, U.S. Postal Service and officers of the Metropolitan Police Department, the chemists, a drug expert, and others, will all testify against all defendants. Joinder will allow the Government to present the same witnesses and the same evidence at the same trial. Such a result as severance for multiple trials is undesirable. See United States v. Erfrasio, 935 F.2d 553, 570-71 (3d Cir. 1991). In addition, the burden upon those testifying would not be "slight," as all have other obligations in addition to making court appearances.

The defendants bear the burden of proving prejudicial joinder under Fed. R. Crim. P. 14(b). They cannot bear that burden. Rule 14 countenances some prejudice to a defendant from a joint trial, and severance is not required simply because a defendant might have a better chance of acquittal if tried separately. United States v. Halliman, 923 F.2d 873, 884 (D.C. Cir. 1991) (citing United States

v. Manner, 887 F.2d at 324); see also United States v. Wright, 783 F.2d 10991, 1095 (D.C. Cir. 1986); United States v. Hopkins, 464 F.2d 816, 819 (D.C. Cir. 1972); United States v. Wilson, 434 F.2d 494, 501 (D.C . Cir. 1970). In making a determination on severance, the Court must balance the risk of prejudice to the defendant against the interest in judicial economy. Butler, 822 F.2d at 1194. The Court of Appeals has struck a balance in favor of joint trials. United States v. Leonard, 494 F.2d 955, 965 (D.C. Cir. 1974). To warrant severance, the risk of prejudice must be compelling. United States v. Cross, 928 F.2d 1030 (11th Cir. 1991). The test for determining "compelling prejudice" is the jury's ability to follow the trial court's instruction and to consider separately the evidence relating to each defendant. Id.; see also United States v. Leavitt, 878 F.2d 1329 (11th Cir. 1989). It is settled that when two or more defendants are charged jointly with committing a criminal offense, there is a strong presumption that they will be tried jointly. Zafiro v. United States, 506 U.S. 534, 113 S.Ct. 933, 937 (1993). Therefore, the Defendants cannot demonstrate any prejudice to the individual rights by a joint trial with their codefendants or with each of the stated offenses in the indictment.

**Defendant Gant's and Shaw's Motion for Early Discovery/Disclosure Witness/Informers:**

The defendants in this case have been indicted on criminal charges in connection with the distribution of cocaine and cocaine offenses in the District of Columbia. The defendant has filed a motion asking the Court to compel the government to disclose to defense counsel the name of the witnesses who dealt with the defendant and make him available for an interview.

In assessing the defendant's claim the government suggests that it is first necessary to address what the government has provided to the defendant concerning these witnesses. At a very early date

following the return of the first Indictment in this case we provided the defendant with copies of audio and video tapes relating to the events charged (and uncharged) in the Superseding Indictment.

Rule 16(a)(2) of the Federal Rules of Criminal Procedure specifically excludes from pretrial discovery:

> (1) reports, memoranda, or other internal government documents made by the attorney for the government or other government agents in connection with the investigation or prosecution of the case, and

> (2) statements made by government witnesses except as provided by the Jencks Act (18 U.S.C. s 3500).

Thus, written or oral statements of witnesses, including cooperating witnesses, are not discoverable under Rule 16. United States v. Fearn, 589 F.2d 1316 (7th Cir. 1978), United States v. Cook; 530 F.2d 145 (7th Cir. 1976), cert. denied, 426 U.S. 909 (1977). Rule 16(b)(2) provides similar protection to defense witnesses and Rule 16(a)(3) extends similar protection to statements made before the grand jury except as provided in Rules 6, 12(I) and 16(a)(1)(A) of the Federal Rules of Criminal Procedure.

Rule 16 does not mandate the disclosure of the names of witnesses who are not experts. Weatherford v. Bursey, 429 U.S. 545 (1977); United States v. Bello-Perez, 977 F.2d 664 (1st Cir. 1992); United States v. Reis, 788 F.2d 54 (1st Cir. 1986); United States v. Colson, 662 F.2d 1389 (11th cir. 1981); United States v. Sukumolachen, 610 F.2d 685 (9th Cir. 1980); United States v. Patton, 578 F.2d 701 (8th Cir.), cert. denied, 439 U.S. 964 (1978); United States v. Bolden, 514 F.2d 1301 (D.C. Cir. 1975); United States v. Baca, 494 F.2d 424 (10th Cir. 1974), United States v. Anderson, 481 F.2d 685 (4th Cir. 1973); United States v. Hancock, 441 F.2d 1285 (5th Cir.), cert.

denied, 404 U.S. 833 (1971); United States v. Persico, 425 F.2d 1375 (2d Cir.), cert. denied, 400

U.S. 869 (1970); United States v. Conder, 423 F.2d 904 (6th Cir.), cert. denied, 400 U.S. 958 (1970).

Indeed, attempts to amend Rule 16 to compel the disclosure of the names of prospective

witnesses by either side have been rejected by Congress.  H.R. Conf. Rep. No. 414, 94th Cong., 1st

Sess. 12 (1975).  The conference report accompanying the 1975 amendments to the Rules of

Criminal Procedure notes:

> A majority of the Conferees believe it is not in the interest of the effective administration of criminal justice to require that the government or the defendant be forced to reveal the names and addresses of its witnesses before trial.  Discouragement of witnesses and improper contacts directed at influencing their testimony, were deemed paramount concerns in the formation of this policy.

Senator McClellan, in his remarks on the Senate floor regarding the 1975 amendments to the

Federal Rules of Criminal Procedure explained that:

> The exposure of witnesses to intimidation and reprisals, moreover, has another aspect in terms of its predictably chilling effect on the willingness of people to come forward and testify in serious felony cases.  Obtaining the public's cooperation with law enforcement is a serious problem.  Anyone who has been a witness knows that it is a real sacrifice and often a terrifying experience to cooperate and testify in our criminal system, although it is a burden many witnesses are more than willing to assume.  The problem is particularly acute in the Federal Government's more important cases which involve prosecution in organized crime and vice, political corruption, narcotics pushing, and large-scale criminal enterprises.  These are areas in which the Federal Government has taken on a singular responsibility for law enforcement.

Cong. Rec., S12876-12879 (July 1, 1975).

While Rule 16 does not compel disclosure of the identities of government witnesses, the

Supreme Court in Roviaro v. United States, 353 U.S. 53 (1957), and its progeny made it clear that

a defendant is not necessarily precluded from obtaining this information.  In Roviaro the defendant

sought the identity of a government informant who was an active participant in the narcotics

transaction for which the defendant was tried and convicted. The government resisted the disclosure of the informant's identity, relying on the informant's privilege recognized by the Court in <u>Scher v. United States</u>, 305 U.S. 251 (1938). The Supreme Court held that fundamental fairness required that the informer's privilege give way when the informant's testimony or identity is relevant to the defense or essential to a fair determination of the cause. <u>Roviaro</u>, 353 U.S. at 60-61.

But in <u>Roviaro</u> the government was seeking to protect, by the informant privilege, the identity of an individual who was a direct witness to the charged events, and whom the government had no intention of calling as a witness. In the instant case, the defendant is seeking the name of a person the Government has always intended to call as a witness. We sought and obtained the indictment of a distribution of heroin to that cooperating witness. The Government's position here is totally inapposite to that addressed by the Court in <u>Roviaro</u>. Rather, defendant here seeks to discover the Government's witnesses, that is, a person the government intends to call in the proof of its case. To the extent that it exists and that the defendant is entitled, the Government will provide to the defendant any information about the confidential cooperating witness for impeachment required under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>Giglio v. United States</u>, 405 U.S. 150 (1972), at the same time it discloses <u>Jencks</u> material, so that the defendant will have any such information to use during cross-examination. Finally, the confidential cooperating witness is expected to provide inculpatory evidence regarding the defendant, not exculpatory.

While the disclosure of the identity of the Government's witnesses is within the discretion of the Court, this Circuit has set a high standard which the defense must meet to compel discovery of government informants. <u>United States v. Warren</u>, 42 F.3d 647, 654-55 (D.C. Cir. 1994); <u>United States v. Skeens</u>, 449 F.2d 1066, 1070 (D.C. Cir. 1971); <u>United States v. Harflinger</u>, 436 F.2d 928

(8th Cir. 1970), <u>cert. denied</u>, 402 U.S. 973 (1971).  It is incumbent upon the defendant to establish that the identity of a witness is necessary to his defense.  <u>See</u> <u>United States v. Khosravi</u>, 733 F. Supp. 137, 138 (D.D.C. 1990) (defendant charged with narcotics conspiracy not entitled to the identity of an informant who arranged the meeting between defendant, undercover agent and co-conspirator). In order to justify the disclosure of the informants' identities in this case, the defendant must make a particularized showing that such a disclosure is both material to the preparation of his defense and reasonable in light of the circumstances.  The defendant has failed to establish a sufficient need for the disclosure of witness's identity.  <u>United States v. Sclamo</u>, 578 F.2d 888, 889 (1st Cir. 1978).  The defendant's claim for disclosure is based upon "'mere speculation that the informer might possibly be of some assistance is not sufficient to meet [defendant's] burden.'"  <u>United States v. Edelin</u>, 128 F.Supp.2d 23, 34 (D.D.C. 2001) (quoting <u>United States v. Mangum</u>, 100 F.3d 164, 172 (D.C. Cir.1996)).

Furthermore, one of the most relevant factors to be considered by the Court is the risk disclosure may pose to the witnesses.  <u>United States v. Cannone</u>, 528 F.2d 296, 301 (2d Cir. 1975); <u>Edelin</u>, 128 F.Supp. at 33.  This Court is well-aware of the increase in witness intimidation and direct actions taken to kill or harm witnesses in similar cases involving the sale of drugs.  In the absence of any countervailing "particularized need" on the part of the defendant, the identity of the cooperating witness should be treated as that of every other government witness and should not be disclosed.

WHEREFORE, the Government respectfully requests that all of Defendant Gant's and Shaw's motions be denied.

Respectfully submitted,

JEFFERY A. TAYLOR
UNITED STATES ATTORNEY
D.C. BAR NO. 498-610

By:    _____
       MARTIN DEE CARPENTER
       Assistant United States Attorney
       Organized Crime and Narcotics Trafficking Section

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this pleading has been served upon defense counsel Attorney Jerry Ray Smith by facsimile, this 16th day of October, 2007, and by electronic filing to:

Attorney Brian K. McDaniel
Email: kbmassociates@aol.com

Attorney Danielle C. Jahn
Email: dani_jahn@fd.org

Attorney Joanne D. Slaight
Email: jslaight@att.net

Attorney Andrea Patricia Antonelli
Email: apantonelli@verizon.net

Attorney Richard Alan Seligman
Email: rickselig@aol.com

Attorney Jerry Ray Smith
Email: jerryraysmith@verizon.net

_____
MARTIN DEE CARPENTER, Bar No. 431-211
Assistant United States Attorney
Organized Crime & Narcotics Trafficking Section
555 4th Street, N.W., Room No. 4116
Washington, D.C.  20530
Office No. (202) 514-7063
Facsimile No. (202) 514-8707

Email: martin.carpenter2@usdoj.gov